LIGGETT & MYERS TOBACCO CO. *v.* J. J. CANNON.

(*Jackson.*   April Term, 1915.)

1. **FOOD.** Chewing tobacco. Impurities. Manufacturer's liability to consumer.

Tobacco, even chewing tobacco, is not a foodstuff, within the exception of foodstuffs from the rule that ordinarily the manufacturer of an article placed by him on the market for sale, and sold by another, is not liable to the ultimate consumer for injuries from defects or impurities in it; "food" including only what tends to build bodily tissues. (*Post, p.* 421.)

Cases cited and approved: Burkett v. Manufacturing Co., 126 Tenn., 467; Boyd v. Coca Cola Bottling Works, 132 Tenn., 23; Com. v. Pflaum, 236 Pa., 294; State v. Ohmer, 34 Mo. App., 115; Austin v. State, 101 Tenn., 563; Bishop v. Weber, 139 Mass., 411.

Case cited and distinguished: Ketterer v. Armour & Co. (D. C.), 200 Fed., 322.

2. **NEGLIGENCE.** Liability of manufacturer. Defective article.

The manufacturer of chewing tobacco is not liable for injury to the ultimate consumer, a purchaser from a retailer, for injuries from a bug imbedded in a plug; it having no knowledge or notice of its presence and the consequent danger of using the tobacco. (*Post, p.* 425.)

Cases cited and approved: Standard Oil Co. v. Murray, 119 Fed., 572; Salmon v. Libby, 114 Ill. App., 258; McCaffrey v. Mossberg & Co., 23 R. I., 381; Bragdon v. Perkins & Co., 87 Fed., 109; Zieman v. Kieckhefer E. M. Co., 90 Wis., 497; Loop v. Litchfield, 42 N. Y., 351; Huset v. Threshing M. Co., 120 Fed., 865; Burkett v. Manufacturing Co., 126 Tenn., 467; Cadillac Motor Car Co. v. Johnson, 221 Fed., 801; Lebourdias v. Vitrified Wheel Co., 194 Mass., 341.

Case cited and distinguished. Hasbrouck v. Armour & Co., 139 Wis., 357.

FROM SHELBY.

Appeal from the Circuit Court of Shelby County to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court.—WALTER MALONE, Judge.

JOHN E. BELL and TANSIL & LANIER, for petitioner.

STEEN & KLEWER, for defendant.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

This cause is before us on a petition filed by J. J. Cannon for a writ of *certiorari* to review a judgment of the court of civil appeals adverse to him, in that a judgment of the circuit court in his favor as plaintiff in this action was reversed, and his suit dismissed, by the court of civil appeals upon the motion for peremptory instructions interposed in the court below by the Tobacco Company.

Cannon purchased of a retail dealer in the city of Memphis a five-cent plug of Star-Navy chewing tobacco, the product of one of the factories of the defendant company, which tobacco had come into the possession of the retailer through intermediate wholesale dealer or dealers. Cannon bit a "chew" from the plug, and within a few minutes his mouth and lips began to smart. Examining the remnant of the

plug he found impressed and imbedded under its top wrapper or leaf cover a large black bug, which he had just bitten in two. He took the partly masticated quid from his mouth, and found "a black something mashed up in it"—a part of the bug he had chewed. Cannon's face was soon in a swollen condition; he became dizzy, and sent for a physician to alleviate his pain.

The theory of the plaintiff in his pleading and proof was that the bug had been negligently manufactured in the plug of tobacco by the defendant company.

The motion of the company for a directed verdict was based upon the grounds, first, that it owed the plaintiff no duty with reference to the tobacco, because of the absence of any contractual relation between it and plaintiff; and, second, that no negligence on its part had been shown by the proof.

The general and true rule undoubtedly is that laid down in the recent case of *Burkett* v. *Manufacturing Company,* 126 Tenn., 467, 150 S. W., 421, that ordinarily the manufacturer of an article or commodity placed by him on the market for sale and sold by another to an ultimate consumer is not liable to the last-named for injuries due to defects or impurities in the article or commodity. But to this rule there are well-recognized exceptions, as is there set forth; one of these being foodstuffs. *Boyd* v. *Coca Cola Bottling Works,* 132 Tenn., 23, 177 S. W., 80.

The contention of plaintiff, Cannon, is that tobacco is to be classed as a food, and is thus to fall within

an exception to the general rule. The court of civil appeals, in substance, sustained this contention, saying:

"While tobacco may not be strictly a food, it occurs to us that the same reasons which underlie the rule of liability in the case of sale for immediate use of drugs, foods, and beverages would apply in the case of tobacco, especially chewing tobacco. The reasons for the rule holding manufacturers of foods liable to purchasers from intermediate dealers, where such food is bought for immediate use, is that the putting of such articles on the market is dangerous to the public; and we think the same rule should be applied to the manufacturer of chewing tobacco. Such manufacturer sells it, knowing that it is to be taken into the human mouth, and that, if it is poisonous, it will as readily poison the user as if it were a food to be taken into the stomach. So we are of the opinion that the first reason given why the trial court should have directed a verdict is not well based."

We are unable to follow the court of civil appeals, either in its argument or to its conclusion as to the *status* properly assignable to tobacco in this regard.

The term "food" includes everything that is eaten or drunk for the nourishment of the body—any substance that is taken into the body, which serves, through organic action, to build up normal tissues or to supply the waste of tissue. *Com.* v. *Pflaum,* 236 Pa., 294, 84 Atl., 842, Ann. Cas., 1913E, 1287; Wiley, Foods and Their Adulteration, 7.

We think it manifest that tobacco is not a foodstuff. It does not tend to build bodily tissue, and as to the average adult its tendency is widely thought to retard the building up of fatty tissue. In respect of its use by the young, it cannot be doubted that it tends to stunt normal development and even growth in stature. The desire or appetite for food is natural and common to all of the human race, while the desire for tobacco must be created.

"There is no nutriment in tobacco. It is merely a narcotic. It is not generally regarded as an article of food. It could hardly be said that an indictment for selling unwholesome food could be sustained by proof that defendant sold a bad or unwholesome cigar." So the sale of tobacco and cigars on Sunday is not authorized under a statute prohibiting the sale of any goods and wares on that day, except drugs or medicines, provisions, and other articles of immediate necessity. *State* v. *Ohmer,* 34 Mo. App., 115.

This court has held that tobacco in one form, the cigarette, is not a legitimate article of commerce, because possessed of no virtue, being bad inherently. *Austin* v. *State,* 101 Tenn., 563, 48 S. W., 305, 50 L. R. A., 478, 70 Am. St. Rep., 703, affirmed 179 U. S., 343, 21 Sup. Ct., 132, 45 L. Ed., 224.

The admission of foodstuffs among those classes of commodities excepted from the general rule of non-liability to the ultimate consumer on the part of the manufacturer is comparatively recent, and this was done because of the close analogy of such commodity

to drugs.   Thus, in *Bishop* v. *Weber,* 139 Mass., 411, 1 N. E., 154, 52 Am. Rep., 715, it was said that the furnishing of provisions which endanger human life or health stands "clearly upon the same ground as the administering of improper medicines, from which a liability springs irrespective of any question of privity of contract between the parties."

Such inclusion of foods among the excepted articles of commerce was based upon public policy and compelling necessity.

The best statement is that embodied in *Ketterer* v. *Armour & Co.* (D. C.), 200 Fed., 322, by Noyes, J.:

"Public policy regards the public good, and I am yet to be convinced that the public welfare will be promoted by holding that producers and manufacturers owe no duty to consumers to guard against diseased and poisonous meats and provisions, except in those isolated cases where they happen to sell directly to them. . . It (the remedy) should rest, as was once said, upon 'the demands of social justice.'"

Foods are used as a matter of necessity in the support of life by all mankind, from the infant to the aged. The legislatures have accordingly undertaken to give safeguards to the consuming public by way of pure food statutes.

Tobacco has not been so treated.   On the contrary, it has been deemed a fit article on which to levy heavy internal revenue taxes; and, as we have seen, the sale of tobacco in certain forms has been restricted and undertaken to be prevented by statute.

It is, we think, apparent that the same consideration of public welfare cannot support the enlargement of the class of foodstuffs proper, so as to include tobacco, even in the form of chewing tobacco, and that public policy as thus far declared is, as it should continue to be, not favorable to a classification that would protect its ultimate consumer under the rule above outlined.

The liability of a manufacturer of tobacco should not be carried to the extent asked by plaintiff, when there is thus a failure to justify its imposition. The door to fraud would be opened wide for false claims on the part of consumers against distant manufactuers, who would be under serious handicaps in making defense. The rule would invite a flood of litigation, in which the parties would lack much of having an equal opportunity to adduce proof that a claimed defect did or did not exist, or that there was or was not negligence imputable to the manufacturer as to the particular article purchased in open market.

In our view, the liability of the defendant company must be made out under the general rule, if at all. The case is closely akin to the well-reasoned case of *Hasbrouck* v. *Armour & Co.,* 139 Wis., 357, 121 N. W., 157, 23 L. R. A. (N. S.), 876, which was an action by an ultimate consumer against the manufacturer of a toilet soap, a cake of which contained a needle or a sharp piece of steel, not visible. The presence of this foreign substance rendered the article dangerous, and the result of its use by the plaintiff was a bodily injury and an impairment of his health. After adverting

to cases of liability falling under exceptions to the general rule, the court ruled against the plaintiff, saying:

"But where the manufacturer or vendor had not at the time of the injury brought himself into any privity with the person injured, within the rule of the foregoing cases or similar and analogous circumstances, the duty which the law imposes in favor of the user or consumer upon a manufacturer or dealer selling at wholesale to dealers generally, but not selling to consumers directly, is identical with the duty imposed by law on all persons with respect to the public generally. There is no privity, no particular relation, carrying with it special duties or a special degree of care in such case. *Standard Oil Co.* v. *Murray,* 119 Fed., 572, 57 C. C. A., 1; *Salmon* v. *Libby et al.,* 114 Ill. App., 258; *McCaffrey* v. *Mossberg & Co.,* 23 R. I., 381, 50 Atl., 651, 55 L. R. A., 822, 91 Am. St. Rep., 637; *Bragdon* v. *Perkins & Co.,* 87 Fed., 109, 30 C. C. A., 567, 66 L. R. A., 924; *Zieman* v. *Kieckhefer E. M. Co.,* 90 Wis., 497, 63 N. W., 1021; *Loop* v. *Litchfield,* 42 N. Y., 351, 1 Am. Rep., 513. The cases are collected in *Huset* v. *Threshing M. Co.,* 120 Fed. 865, 57 C. C. A., 237, 61 L. R. A., 303, and the rule well stated from the viewpoint that no duty rests upon the manufacturer and seller to dealers in favor of the purchaser from the latter, with certain specified exceptions. . . .

"The manufacturer or vendor should have no immunity from duties common to all merely because he is a manufacturer or vendor. At the same time there

is in the common law no authority for imposing special duties upon him by reason of any privity between him and the vendee of his vendee, except in the instances mentioned, which may be regarded as occasions of a general duty toward the public to whom the wares are offered, or as exceptions to the rule of nonliability.''

In the absence of a duty owed by the defendant company as manufacturer of the plug of tobacco, the failure to observe which would be actionable, a case of liability can only be made by a showing of knowledge, or a reasonable means of knowledge from anything brought to the notice of the manufacturer, that the use by the consumer would be dangerous. In that event knowledge or notice disregarded gives to the transaction the color of fraud, with consequent liability to the distant consumer injured. *Burkett* v. *Manufacturing Co.*, supra; *Hasbrouck* v. *Armour & Co.*, supra; *Cadillac Motor Car Co.* v. *Johnson*, 221 Fed., 801, —— C. C. A., ——; *Lebourdias* v. *Vitrified Wheel Co.*, 194 Mass., 341, 80 N. E., 482.

In the instant case there is no proof or contention that the tobacco was put on the market with knowledge on the part of defendant that the bug was so imbedded. On the contrary, the proof shows that the plant of defendant was sanitary in its appointments, that the process of manufacture was under continuous inspection until the tobacco was put into plug form, and that there were maintained appliances for keeping the tobacco until completed as to manufacture clear of dirt or any foreign substances.

The court of civil appeals reversed the judgment of the circuit-court, and sustained defendant's motion for a directed verdict, on the ground that negligence was not shown but negatived.

A correct result having been reached by that court, we affirm its judgment.