Pillars *v.* R. J. Reynolds Tobacco Co. et al.

[78 South. 365, Division B.]

1. Negligence. *Liability of manufacturer of goods.*
While the general rule is that manufacturers are not liable to the ultimate consumer for damages resulting from defects and impurities of the manufactured articles, the rule being generally based upon the theory that there is no contractual relation existing between the ultimate consumer and the manufacturer, yet the courts have from time to time made exceptions to the rule and held the manufacturers of foods, beverages, drugs, condiments, and confections liable to the ultimate consumer for damages resulting from the negligent preparation of their products.

2. Same.
While chewing tobacco is neither a food, beverage, condiment or drug, yet the manufacturer must exercise great care to see that it does not contain poisonous substance.

3. NEGLIGENCE. *Manufacturers of goods causing injury.*
   Where a human toe was found in chewing tobacco and poisoned an ultimate consumer, the manufacturer was liable.

4. NEGLIGENCE. *Vendors of goods causing injury.*
   A distributor is not negligent in not discovering a human toe concealed in chewing tobacco, which poisoned a consumer.

APPEAL from the circuit court of Hinds county.
HON. W. H. POTTER, Judge.

Suit by Bryson Pillars against R. J. Reynolds Tobacco Company and another. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Mayes & Mayes,* for appellant,

We admit very frankly that the general rule is that the manufacturer is not liable to the ultimate consumer for damages resulting from the defects or impurities in the articles manufactured by it, but that is merely the general rule. There are many exceptions to the general rule. We are sure that our opponents will agree with us that one of the exceptions is in the case of the manufacturer of foodstuffs. Our opponents will, we are sure, agree with us that the manufacturer of foodstuffs is liable to the ultimate consumer for damages resulting from impurities in the food which he manufactures and sells and that too, even though it might appear that the manufactured article passed through several hands between the time it leaves the factory and the time it is used by the ultimate consumer. Another exception to the general rule is in the case of drugs. Other exceptions are in the case of condiments, beverages and confections. These exceptions to the general rule are based on public policy. Public policy always has for its aim the preservation of health and life of the people. Since foodstuffs, drugs, condiments, beverages and confections are taken into the system by the vast number of the people of our country, and since any

impurity in these articles would greatly endanger the life and health of our people, public policy demands that the life and health of these people be insured by holding the manufacturers of these articles to strict account for the wholesomeness of their wares, and demands that these manufacturers respond to the ultimate consumer in damages for injuries resulting from impurities in their wares.

As already stated, we know that our opponent will agree with us that the general rule and also the exceptions to the rule, and also the reasons therefor are as we have stated above, but the R. J. Reynolds Tobacco Company, will seek to avoid liability in the present case by contending that chewing tobacco is not a foodstuff, nor a drug, nor a condiment, nor a beverage, nor confection; and that therefore chewing tobacco and its manufacturers does not fall within one of the exceptions to the rule, and in support of their contention they will rely upon the case of *Liggett & Myers Tobacco Company* v. *Cannon,* 178 S. W. 1009.

In the case of *Liggett & Myers Tobacco Company* v. *Cannon, supra,* the supreme court of Tennessee held that chewing tobacco was not a foodstuff, and that therefore a case involving the manufacture and sale of chewing tobacco does not fall within the exception to the general rule; and that therefore in that case the Liggett & Myers Tobacco Company was not liable to Cannon on account of sickness which he experienced as a result of chewing a piece of tobacco which was manufactured by the Liggett & Myers Tobacco Company and which contained a large black bug.

It is our contention that the rule announced by the Tennessee supreme court in the case of *Liggett & Myers Tobacco Company* v. *Cannon,* was erroneous, while it is true that chewing tobacco is probably not a food, nor a drug, nor a condiment, nor a beverage, nor a confection; still we say, that all of the reasons for making exceptions in the cases of food, drugs, condi-

ments, beverages and confections exists as well in the case of chewing tobacco, and that public policy demands that the manufacturer of chewing tobacco be held to just such strict accounting for the wholesomeness of their wares, as are the manufacturers of these other articles. *Mazetti* v. *Armour & Company,* 48 L. R. A. (N. S.) 213, and especially at page 231.

"To the old rule that a manufacturer is not liable to third persons who have no contractual relation with him, for negligence in the manufacturer of the article, should be added another exception, not one arbitrarily worked by the courts, but arising, as did the three to which we have heretofore alluded, from the changing conditions of society.

"An exception to a rule will be declared by courts when the case is not an isolated instance, but general in its character, and the existing rule does not square with justice. Under such circumstances a court will, if free from the restraint of some statute, declare a rule that will meet the full intendment of the law. No case has been cited that is squarely in point with the instant case; but there is enough in the adjudged case to warrant us in our conclusion."

Another view of the rule. As we have already stated the general rule is that the manufacturer is not liable to the ultimate consumer. The reasoning for the rule is that ordinarily there is neither privity of contract between the two, nor any duty owed by the one to the other. One exception to the general rule is, as we have already seen, in the case of the manufacture of foodstuffs, etc. Quite another exception to the rule is in those cases where the manufacture knows of the defects or impurities in his wares. In the first class of exceptions, viz., foodstuffs, etc., the manufacturer is liable, although he has no knowledge of the existence of defects or impurities. In the second class of exceptions holding the manufacturer liable it must be shown that the

manufacturer knew or should have known of the existence of the defects or impurities. In those cases where the manufacturer sells goods knowing them to be defective, the manufacturer is guilty of fraud on the manufacturer's liability is placed on that ground. This doctrine is recognized by the supreme court of Tennessee in the very case of *Liggett & Myers Tobacco Company* v. *Cannon, supra,* upon which our opponents so strongly rely. In its opinion in that case the supreme court of Tennessee said:

"In the absence of a duty owed by the defendant company as manufacturer of the plug of tobacco, the failure to observe which would be actionable, a case of liability can only be made by a showing of knowledge, or a reasonable means of knowledge from anything brought to the notice of the manufacturer, that the use by the consumer would be dangerous. In that event knowledge or notice disregarded gives to the transaction the color of fraud with consequent liability to the distant consumer injured."

So we say in the case at bar that the R. J. Reynolds Tobacco Company is liable for damages on account of the presence of the dead toe in the tobacco, because tobacco falls within the same class of exceptions to the general rule as does foodstuffs, etc. But if we are mistaken as to that, then we say that the R. J. Reynolds Tobacco Company is liable in this case under the other class of exceptions, viz., for fraud, because it sold an unwholesome piece of tobacco with the knowledge of the fact that it was unwholesome.

If there ever was a case in the world where the doctrine of *res ipsa loquitur* applies both to the question of the Tobacco Company's negligence in permitting this toe to be in this tobacco and to the question of whether or not the R. J. Reynolds Tobacco Company knew that this toe was in this tobacco, this is such a case.

*John Sivley Rhodes* and *R. H. & J. H. Thompson,* for appellee.

Tobacco is not a food, and it is not akin to food. Neither is it a drug, a condiment or a confection. Webster's International Dictionary thus defines the word ''food:''

''What is fed upon; that which goes to support life by being received within, and assimilated by the organism of an animal or a plant; nutriment; ailment; especially what is eaten by animals for nourishment.''

The term ''food'' is defined by section 2280 of the Mississippi Code of 1906, as follows: ''The term 'food' includes every article used as food or drink by man.'' In *State* v. *Ohmer,* 34 Mo. App. 115, quoted in 3 Words & Phrases, page 2856, food is defined as, ''Substance that promotes the growth of animal or vegetable life.''

Counsel for appellant insists that the reasoning of the court of civil appeals of Tennessee in the case of *Liggett & Myers Tobacco Company* v. *Cannon,* 178 S. W. 1009, is good and that the supreme court of Tennessee, in reversing the finding of the court of civil appeals, was in error. A reading of the opinion of the supreme court of Tennessee in this case completely answers the contention of appellant.

The peremptory instruction in favor of the defendant was properly given in this case for two reasons; first, the defendants owed plaintiff no duty with reference to the tobacco because of the absence of any contractual relation between them and plaintiff; and, second, because no negligence on the part of defendants was shown by the proof.

Appellant insists that this court should overrule the well-established line of authorities and should create a still further exception to the general rule that the manufacturer of an article is not liable to the ultimate consumer with whom there is no contractual re-

lation by extending the rule to embrace tobacco. We submit, public policy does not justify such an extension.

In our view, the liability of the defendant company must be made out under the general rule, if at all. The case is closely akin to the well-reasoned case of *Hasbrouck* v. *Armour & Co.*, 139 Wis. 357, 121 N. W. 157, 23 L. R. A. (N. S.) 876, which was an action by an ultimate consumer against the manufacturer of a toilet soap, a cake of which contained a needle or a sharp piece of steel, not visible. The presence of this foreign substance rendered the article dangerous, and the result of its use by the plaintiff was a bodily injury and an impairment of his health. After adverting to cases of liability falling under exceptions to the general rule, the court ruled against the plaintiff saying:

"But where the manufacturer or vendor had not at the time of the injury brought himself into any privity with the person injured, within the rule of the foregoing cases or similar and analogous circumstances, the duty which the law imposes in favor of the user or consumer upon a manufacturer or dealer selling at wholesale to dealers generally, but not selling to consumers directly, is identical with the duty imposed by law on all persons with respect to the public generally. There is no privity, no particular relation, carrying with it special duties or a special degree of care in such case. *Standard Oil Co.* v. *Murray*, 119 Fed. 572, 57 C. C. A. 1; *Salmon* v. *Libby et al.*, 114 Ill. App. 258; *McCaffrey* v. *Mossberg & Co.*, 23 R. I. 381, 50 Atl. 651, 55 L. R. A. 822, 91 Am. St. Rep. 637; *Bragdon* v. *Perkins & Co.*, 87 Fed. 109, 30 C. C. A. 567, 66 L. R. A. 924; *Zieman* v. *Kieckhefer E. M. Co.*, 90 Wis. 497, 63 N. W. 1021; *Loop* v. *Litchfield*, 42 N. Y. 351, 1 Am. Rep. 513. The cases are collected in *Huset* v. *Threshing M. Co.*, 120 Fed. 865, 57 C. C. A. 237, 61 L. R. A. 303, and the rule well stated from the viewpoint that no duty rests upon the manufacturer and seller to dealers in favor of the purchaser and from the latter, with certain specified

exceptions. *Burkett* v. *Manufacturing Co.*, *supra;* *Hasbrouck* v. *Armour & Co.*, *supra;* *Cadillac Motor Co.* v. *Johnson* 221 Fed. 801, —, C. C. A. —; *Lebourdias* v. *Vitrified Wheel Co.*, 194 Mass 341, 80 N. E. 482.

Appellants invokes the doctrine of *res ipsa loquitur* and seems to overlook the fact that this doctrine does not shift the burden of proof.

"Whether the defendant introduces evidence or not, the plaintiff is not entitled to a verdict unless he satisfies the jury by the preponderance of the evidence that his injuries were attributable to the defendant's negligence." *Stewart* v. *Carpet Co.*, 138 N. C. 66, 50 S. E. 562.

In the absence of a contractual relation between the parties to this suit, the doctrine of *res ipsa loquitur* can have no bearing.

We wish to call the court's attention to the ruling approved by this court in the unreported case on the docket of this court No. 17,765, entitled *Hicks* v. *Meridian Coca Cola Bottling Company.*

The doctrine of *res ipsa loquitur* always speaks as of the time of the facts shown. It has no retroactive effect. In this case the finding of the bone speaks as of the date it was found. It does not testify and has no probative force to show preexisting conditions or facts. No man can tell from the evidence when the bone became imbedded in the plug.

It is clear, we submit, the trial court committed no error, hence the judgment must be affirmed.

COOK, P. J., delivered the opinion of the court.

The appellant sued the Corr-Williams Tobacco Company, distributors, and R. J. Reynolds Tobacco Company, manufacturer, of "Brown Mule Chewing Tobacco," for damages resulting to the appellant from chewing a piece of Brown Mule tobacco in which was concealed a decomposed human toe. The evidence disclosed

that R. J. Reynolds Tobacco Company was the sole
manufacturer of the tobacco, and that this company
manufactured the identical plug which contained the
rotten toe; the tobacco in question was sold by the manu-
facturer to the other defendant, the Corr-Williams
Company, and resold by the latter company to a retail-
er in Jackson, and was bought by appellant from the
retailer. ( It seems that appellant consumed one plug of
his purchase, which measured up to representations, that
it was tobacco unmixed with human flesh, but when ap-
pellant tackled the second plug it made him sick, but,
not suspecting the tobacco, he tried another chew, and
still another, until he bit into some foreign substance,
which crumbled like dry bread, and caused him to
foam at the mouth, while he was getting "sicker and
sicker." Finally, his teeth struck something hard; he
could not bite through it. After an examination he
discovered a human toe, with flesh and nail intact. ) We
refrain from detailing the further harrowing and
nauseating details. The appellant consulted a physician,
who testified that appellant exhibited all of the char-
acteristic symptoms of ptomaine poison.( The physician
examined the toe and identified it as a human toe in
a state of putrefaction, and said, in effect, that his
condition was caused by the poison generated by the
rotten toe. ( At the close of the evidence for plaintiff
the trial judge, at the request of the defendants,
directed a verdict for the defendants, and from a judg-
ment responsive to this instruction, an appeal is
prosecuted to this court.

Generally speaking, the rule is that the manufacturer
is not liable to the ultimate consumer for damages re-
sulting from the defects and impurities of the manu-
factured article. This rule is generally based upon the
theory that there is no contractual relations existing
between the ultimate consumer and the manufacturer.
From time to time, the courts have made exceptions to
the rule. The manufacturers of food, beverages, drugs,

condiments, and confections have been held liable to ultimate consumers for damages resulting from the negligent preparation of their products. The contention of the defendants here is that the limit has been reached by the courts, and that the facts of this case do not warrant an exception in favor of the plaintiff, and this view was adopted by the learned trial court. The exceptions already made were for the protection of the health of the people, and to insure a scrupulous care in the preparation of those articles of commerce so as to reduce to a minimum all danger to those using them.

If poisons are concealed in food, or in beverages, or in confections or in drugs, death or the impairment of health will be the probable consequence. We know that chewing tobacco is taken into the mouth, that a certain proportion will be absorbed by the mucous membrane of the mouth, and that some, at least, of the juice or pulp will and does find its way into the alimentary canal, there to be digested and ultimately to become a part of the blood. Tobacco may be relatively harmless, but decaying flesh, we are advised, develops poisonous ptomaines, which are certainly dangerous and often fatal. Anything taken into the mouth there to be masticated should be free of those elements which may endanger the life or health of the user. No one would be so bold as to contend that the manufacturer would be free from liability if it should appear that he purposely mixed human flesh with chewing tobacco, or chewing gum. If the manufacturer would be liable for intentionally feeding putrid human flesh to any and all consumers. of chewing tobacco, does it not logically follow that he would be liable for negligently bringing about the same result? It seems to us that this question must be answered in the affirmative.

*Liggett & Myers Co.* v. *Cannon,* 132 Tenn. 419, 178 S. W. 1009, L. R. A. 1916A, 940, Ann. Cas. 1917A, 179, is not controlling. The supreme court of Tennessee held in that case that tobacco was not food and that we are

ready to admit, and it may be that the decision of that case was correct, but we are inclined to the opinion that the court of appeals of Tennessee had the best of the argument in that case.

We have read with care the very able and instructive brief for the appellee, in which he argues and we think proves that tobacco is not food for human beings at least, no matter how much tobacco worms or the town goat may relish it, but we are of opinion that we are not restricted to this narrow question, nor have we reached the limit when we admit that tobacco is not a beverage, or a condiment, or a drug.

The fact that the courts have at this time made only the exceptions mentioned to the general rule does not prevent a step forward for the health and life of the public. The principles announced in the cases which recognize the exceptions, in our opinion, apply, with equal force, to this case.

We believe that the way the tobacco is to be used furnishes the reason for great care in its preparation. If we eat food or drink beverages containing substances which under certain conditions may endanger our lives, for obvious reasons, he who prepares the food or drink should be required to exercise great care to prevent the dangerous conditions. It appears sufficiently certain that chewing tobacco with poisonous ptomaines hidden in it is dangerous to the consumer, as was proven in this case.

We can imagine no reason why, with ordinary care human toes could not be left out of chewing tobacco, and if toes are found in chewing tobacco, it seems to us that somebody has been very careless.

We will reverse the judgment of the lower court as to the manufacturer and affirm the judgment as to the distributor. The distributor could not have suspected that human toes were concealed in the plug, and was not negligent in not discovering the noxious contents of the plug.

*Reversed in part and affirmed in part.*