## LIGGETT & MYERS TOBACCO CO. v. WALLACE.

### No. 4438.

Court of Civil Appeals of Texas. Texarkana.
March 1, 1934.

Rehearing Denied March 8, 1934.

Ramey, Calhoun, Marsh & Higgins, of Tyler, for appellant.

B. F. Whitworth, of Linden, for appellee.

SELLERS, Justice.

V. A. Wallace, the appellee, brought this suit in the district court of Cass county to recover damages in the sum of $1,931 against Liggett & Myers Tobacco Company, the appellant. The appellee alleged that the appellant is engaged in the manufacture, sale, and distribution of various tobacco products, such as cigarettes, smoking tobacco, and chewing tobacco. That its custom·is to take orders through its salesmen from retail dealers for these tobacco products and the retail dealers in turn supply the general public, selling these various tobacco products to any customers who wish to purchase same. That among other tobacco products, the appellant manu-

factures, sells, and distributes a certain brand of chewing tobacco known as "Tinsley's Natural Leaf Tobacco," and this particular brand is sold by no other company or individual other than the appellant. The appellee further alleged:

"Plaintiff would show to the Court that on or about January 17th, 1931, he purchased from a retail store in Linden, Texas, to-wit: The M. System Store, a cut of Tinsley's Natural Leaf Tobacco, commonly known as 'thick Plug Tinsley's' paying therefor the sum of Fifteen Cents; that the defendant sells and distributes this particular brand of tobacco and that the defendant had sold this tobacco to the M. System Store. That plaintiff had taken several chews from this cut of tobacco and did not discern any difference between this particular cut and other cuts of the same brand of tobacco that plaintiff had theretofore used. That on the evening of January 18, 1931, the day after he had purchased this cut of tobacco, plaintiff took a chew from this cut and upon getting it in his mouth he found that there was some foreign substance, other than the tobacco, in his mouth; whereupon he immediately took the tobacco from his mouth and upon examination found an enormous quantity of small metal particles resembling steel filings or bits of small wire sticking in his tongue and mouth; which caused a burning sensation and severe pain. Plaintiff rinsed his mouth with vinegar and with soda water in an effort to rid his mouth of the metal particles and allay the pain and immediately went to see a physician; that the physician worked for some time extracting these tiny metal particles from the mouth and tongue of plaintiff, it being necessary to scrape plaintiff's tongue and the inside of his mouth. Plaintiff represents to the Court that there were innumerable pieces of the tiny metal particles in his mouth and tongue and throat and plaintiff verily believes that some of the metal particles were swallowed by him, thereby admitting the metal into the stomach of the plaintiff.

"Plaintiff would further show to the Court, as a direct result of the aforementioned happening, that his mouth, tongue and throat became inflamed, swollen and sore; that he suffered intense and excruciating pain by reason of the condition of his mouth, tongue and throat; that he was thrown into a high fever and that he had frequent and severe spells of vomiting; that by reason of his condition he was unable to rest and that he suffered acutely and was confined to his bed for the period of one week, during which time he was under the treatment of a physician, all of which was the direct result of plaintiff's getting the metal particles in his mouth as aforesaid.

"Plaintiff would further show to the court that upon examination it was found that the cut of tobacco which plaintiff had bought from the M. System Store on January 17, 1931, and from which the plaintiff had taken this chew on the 18th day of January, 1931, and which was sold to the M. System Store by the defendant, Liggett and Myers Tobacco Company, had a great and enormous quantity of the tiny metal particles imbedded in it such as had been taken from the mouth and tongue of plaintiff by the physician as aforesaid. That the presence of these metal particles in the tobacco as aforesaid was due to the negligence and carelessness of the defendant, its agents and employees, in selling and distributing tobacco containing a substance such as this cut of tobacco contained and that this negligence of the defendant, its agents and employees, was the direct and proximate cause of the injuries, illness, suffering and incapacity of plaintiff herein complained of and result in the damages of the plaintiff as herein set forth.

"Plaintiff represents to the court that the defendant is guilty of gross negligence in selling and distributing tobacco containing metal particles such as was contained in the piece of tobacco bought by plaintiff as aforesaid on January 17, 1931, at the M. System Store in Linden, Texas, and that such negligence on the part of the defendant was the direct and proximate cause of the sufferings, pains, illness and incapacity experienced by the plaintiff."

The appellant's answer contained a general demurrer and general denial.

There is evidence to support appellee's cause of action as alleged, and in this connection we will say that appellee's evidence is to the effect that the particles found in the tobacco were there at the time the plug of tobacco involved was in the process of being pressed by the appellant in the manufacture of the same.

Appellant offered as a witness its superintendent of the plant where the brand of tobacco here involved is manufactured, and this witness minutely described the many processes through which the tobacco is carried from the time it arrives at the factory to the time it is packed for delivery to the retail trade. His evidence is to the effect that appellant uses the latest and best machinery it is possible to secure in the manufacture of

its tobacco, and this witness' testimony would tend to show that appellant was not negligent but used due care in the manufacturing of its products and that appellee's injury was not the result of any neglect of duty on the part of appellant. At the close of the evidence the court submitted the case to the jury upon a general charge in which the court, among other matters, instructed the jury as follows: "If you believe from a preponderance of the evidence that the defendant, Liggett and Myers Tobacco Company, manufactured, sold and distributed the tobacco in question, and that it then and there contained small particles embedded therein, and that the defendant was negligent in so doing, and that the M. System Store of Linden, in Cass County, Texas, purchased said tobacco from the defendant, and that on or about the 17th day of January, A. D. 1931, the same was purchased by the plaintiff from the said M. System Store, and you further believe from a preponderance of the evidence that said tobacco was so manufactured, sold and distributed by the defendant for the purpose of and to be used as chewing tobacco, and that the plaintiff purchased and used the same as chewing tobacco, and upon his use thereof as such the small particles of metal, if any, therein contained stuck into his mouth, tongue, throat or stomach, and thereby causing plaintiff physical pain and injury to his mouth, tongue, throat or stomach and you further believe from a preponderance of the evidence that such negligence, if any, of the defendant in so manufacturing, selling and distributing said tobacco with such metallic substance embedded therein, if any, was the direct and proximate cause of plaintiff's injuries, if any, then you will find for the plaintiff, otherwise you will find for the defendant."

The jury rendered a verdict in favor of appellee and assessed his damage at the sum of $1,000, and in keeping with the verdict the court entered judgment for appellee. From this judgment the appellant has duly prosecuted this appeal.

■ Appellant in its first proposition of error contends that appellee is not entitled to recover for the reason that there is no privity of contract between appellant and appellee. It may be regarded as a settled general rule that a manufacturer or seller to dealers of a defective article is not liable for injuries to the person or property of an ultimate consumer who has purchased from a middleman unless the article was inherently dangerous to life or property; the theory being that, in the absence of contractual relations be-

tween the parties, no liability can be predicated upon the manufacturer's or seller's negligence—at least where the wrongful act or acts are not known at the time, and the article is not immediately dangerous to third persons. This general rule has been followed in this state. Avery Co. v. Barker (Tex. Civ. App.) 243 S. W. 695.

■ A well-established exception to the general rule of absence of liability in case of lack of privity of contract is where the article or substance sold or packed is imminently, inherently, or essentially dangerous in its nature or because of the use to which it is to be put by whoever may use the same for the purpose for which it was intended; the rule being that the manufacturer or packer of such an article is not relieved from liability for injuries resulting to an ultimate consumer from its negligence, by the fact that there was no privity of contract between it and the person so injured. Under this general exception our courts have sustained a recovery against the manufacturer of soap. Armstrong Packing Co. v. Clem (Tex. Civ. App.) 151 S. W. 576. Likewise a recovery has been sustained against a distributor of high explosives. Cohn v. Saenz (Tex. Civ. App.) 211 S. W. 492. And also a recovery has been upheld against a wholesale druggist. Texas Drug Co. v. Cadwell (Tex. Civ. App.) 237 S. W. 968. In a very recent case a manufacturer of candy was held liable to the ultimate consumer. Brown Cracker & Candy Co. v. Jensen et al. (Tex. Civ. App.) 32 S.W.(2d) 227.

■ While no case involving facts similar to the case at bar has ever reached the appellate courts of this state, and while there is authority to the contrary, Liggett & Myers Tobacco Co. v. Cannon, 132 Tenn. 419, 178 S. W. 1009, L. R. A. 1916A, 940, Ann. Cas. 1917A, 179, we have concluded that the great weight of authority sustains a recovery in such cases. The facts in the case at bar are very similar to those in a very recent case decided by the Supreme Court of North Carolina in which a recovery was sustained. Corum v. R. J. Reynolds Tobacco Co., 205 N. C. 213, 171 S. E. 78, 80. In this case the authorities on the liability of a manufacturer and distributor of tobacco to an ultimate consumer who purchased through a middle man are reviewed, and from which we quote:

"There are many decisions to the effect that one who prepares in bottles or packages foods, medicine, drugs, or beverages, and puts them on the market, is charged with the duty of exercising due care in the preparation of these commodities, and under cer-

tain circumstances may be liable in damages to the ultimate consumer. * * *

"In this case the plaintiff adduced evidences tending to show that the defendant is the sole manufacturer of 'Apple Sun-cured Tobacco'; that the tobacco in question was of this brand and had the appearance of having recently come from the store; that it was protected by a wrapper; that all the wrapper had not been removed at the time of the injury; that when a part of it was torn away the imprint of a fishhook and a string which had been embedded in the plug of tobacco was discovered; that some other foreign substance had been found in the same brand of tobacco within two months preceding the injury; and that the foreman of the machine room had previously had complaints that other foreign substances had been left in the manufactured product. * * * Without the necessity of invoking the maxim res ipsa loquitur, the plaintiff introduced independent evidence which called for a verdict.

"Without antagonizing the stated principle, the defendant takes the position that tobacco is not a food or within the category of any of the articles numerated above, and is hence beyond the scope of the cited cases. The word 'food' has been variously defined by lexicographers as nutritive material taken into the body for the purpose of growth, repair, or maintenance; that which is eaten or drunk for nourishment; whatever supplies nourishment to organic bodies. It may be conceded for the present purpose that tobacco is not a food; but it does not necessarily follow that the defendant is exempt from liability.

"In Pillars v. R. J. Reynolds Tobacco Co., 117 Miss. 490, 78 So. 365, 366, the plaintiff sued the defendant for damages resulting from the chewing of a piece of Brown Mule tobacco in which a decomposed human toe was concealed. After referring to the general rule and its exceptions together with the contention that the limit has been reached by the courts and that the facts did not warrant an exception in favor of the plaintiff, the court observed: 'We know that chewing tobacco is taken into the mouth, that a certain proportion will be absorbed by the mucous membrane of the mouth, and that some, at least, of the juice or pulp will and does find its way into the alimentary canal, there to be digested and ultimately to become a part of the blood. Tobacco may be relatively harmless, but decaying flesh, we are advised, develops poisonous ptomaines, which are certainly dangerous and often fatal. Anything taken into the mouth there to be masticated should be free of those elements which may endanger the life or health of the user. * * * The fact that the courts have at this time made only the exceptions mentioned to the general rule does not prevent a step forward for the health and life of the public. The principle announced in the cases which recognize the exceptions, in our opinion, apply, with equal force, to this case.'

"The principle was maintained and applied in the subsequent case of R. J. Reynolds Tobacco Co. v. Loftin (Miss.) 99 So. 13, in which it appeared that in a plug of chewing tobacco there was embedded the partially decomposed body of a small snake.

"In Liggett & Myers Tobacco Co. v. Rankin, 246 Ky. 65, 54 S.W.(2d) 612, it was shown that a worm 'about the size of a match with many stingers on it' had been pressed into a plug of tobacco in the process of manufacture, and that when the plaintiff chewed the tobacco the stingers became embedded in his mouth, the inside of which 'looked like a man's face with a week's growth of beard.' The plaintiff suffered pain, was unable to work, and brought suit for damages. Remarking that chewing tobacco is made to be chewed and that things dangerous to health when taken into the mouth are no less within the rule than things that are taken into the stomach, the court said: 'While tobacco is not a food, it acts upon the nerves and the nerves are no less to be considered than the stomach on which the food acts. The juices from the chewing of tobacco do in fact find their way to the stomach, and poison in chewing tobacco is no less dangerous to health than poison in chewing gum or a liquid taken for its effect on the nerves. Here there was a poisonous worm and the case cannot be distinguished from those where poison was found in other articles manufactured and sold for human consumption. Although chewing tobacco is not a food, it is within the rule which applies to all things manufactured for human consumption which are dangerous to health or life.'

"Substantially the same principle was enforced in Foley v. Liggett & Myers Tobacco Co., Inc., 136 Misc. 468, 241 N. Y. S. 233, in which the grievance was personal injury resulting from the use of 'Velvet' tobacco which contained the mutilated fragments of a dead mouse. 'If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger.' McPherson v. Buick Motor Co., 217 N. Y. 382, 111 N. E. 1050, 1053, L. R. A. 1916F, 696, Ann. Cas. 1916C, 440.

"The defendant has cited Liggett & Myers

Tobacco Co. v. J. J. Cannon, 132 Tenn. 419, 178 S. W. 1009, L. R. A. 1916A, 940, Ann. Cas. 1917A, 179, in which it was held that a manufacturer of chewing tobacco was not liable for injury to a consumer because of the incorporation into the product of a poisonous insect if he had no actual or constructive knowledge of its existence; but some of the decisions heretofore mentioned referred to the opinion in that case and concluded that the distinction therein stated cannot be maintained. Upon the merits of the present case we entertain a similar opinion. A fishhook embedded and concealed in a plug of tobacco, though not a poison, is no less capable of inflicting serious physical injury. The trial court was correct in denying the motion for nonsuit."

■■ The charge of the court is complained of as being erroneous in the particular of authorizing a finding by the jury of negligence on the part of the appellant in the manufacture of the plug of tobacco that was purchased by the appellee from the M. System Store. The point made is that the petition contained no allegation that the metal particles were present or imbedded in the particular cut of tobacco through the negligence of the defendant in the "manufacture" of it. It is concluded that the point may not be sustained. The particular paragraph in view contains an averment, "That the presence of these metal particles in the tobacco aforesaid" were there owing "to the negligence" of the defendant and its employees "in selling and distributing tobacco containing a substance such as this cut of tobacco contained." The language is inapt and inconsistent and should be construed in the light of the intendment of the petition. The intendment of the petition, considered in its entirety, plainly was to predicate negligence, not simply and alone "in selling and distributing" aside from the manufacture, but in manufacturing and placing on the market for sale, both and together, of tobacco which had injurious particles imbedded in it in the process of manufacture. The defendant was not impleaded in the character of one who was engaged in the business of simply selling and distributing the particular tobacco to dealers. The defendant was impleaded and liability was rested in the character of one who was engaged in the manufacturing and selling, all and together, of tobacco to dealers generally. The essential facts to support that theory are stated. The facts are alleged relative to the character of the defendant that: "The defendant is engaged in the manufacture, sale and distribution, and manufactures, sells and distributes a certain brand of tobacco known as Tinsley's Natural Leaf Tobacco—and a cut of Tinsley's Natural Leaf Tobacco that the defendant had sold to the M. System Store—had a great and enormous quantity of tiny metal particles imbedded in it." The petition was based upon the definite and consistent theory, and the theory may be sustained, that the appellant was engaged in the business of manufacturing and selling to dealers generally a particular brand of chewing tobacco; that a certain plug of tobacco of that particular brand which had been manufactured and sold by appellant to the M. System Store, a dealer in Linden, Tex., contained metal particles imbedded in it. And the general scope and tenor of the pleading is to rest a negligent breach of duty on the part of the appellant in manufacturing and selling to the dealer, M. System Store, at Linden, Tex., for sale and distribution by him to the ultimate user a plug of tobacco containing injurious particles which had become imbedded in its during the process of manufacture. Such construction is appropriate to the action brought and is in harmony and in accord with the facts alleged. It is permissible to determine the theory of the complaint from the leading averments and general scope and tenor of the pleading. 49 C. J. p. 167.

The judgment of the trial court is affirmed.