## COCA COLA BOTTLING CO. v. ENAS.

### No. 5453.

Court of Civil Appeals of Texas. Amarillo.

June 29, 1942.

Rehearing Denied Sept. 7, 1942.

Second Rehearing Denied Oct. 6, 1942.

Robertson, Leachman, Payne, Gardere & Lancaster, of Dallas, for appellant.

A. A. Dawson, of Canton, for appellee.

STOKES, Justice.

Appellee, C. A. Enas, instituted this suit against appellant, Coca Cola Bottling Company, a corporation, for damages alleged to have been sustained by him as a result of drinking a portion of a bottle of Coca Cola which contained the decomposed body of a spider. He alleged, and the evidence showed, that after drinking a portion of the contents of the bottle he observed a peculiarity in the taste and color of the beverage; that an investigation revealed the body of the spider adhered to the inside of the bottle near the bottom; that within a short time after drinking the beverage he became violently ill and had not entirely recovered when the case was tried. The petition contained sufficient allegations to form a basis for the proof offered as to his personal injury and damage as a result of the experience.

The case was submitted to a jury, and in their answers to special issues submitted to them, the jury found that the bottle of Coca Cola was filled and capped by appellant at its plant and that at the time it was filled and capped it contained the spider. In answer to the special issue as to negligence, the jury exonerated appellant and returned a negative answer, thus finding appellant was not guilty of negligence, but in answer to the special issue concerning proximate cause, they found that the negligence of appellant in filling and capping the bottle of

Coca Cola with the spider in it was the proximate cause of appellee's injury and damage. They found that $2,000 would reasonably compensate appellee for the pain and suffering sustained by him and, upon motion of appellee, the court rendered judgment in his favor against appellant for the sum found by the jury.

Appellant duly excepted to the judgment and presents the case in this Court upon a number of assignments of error but we deem it unnecessary to discuss them in detail. The controlling question is presented by its contention that, the jury having found in its favor on the question of negligence, the court erred in rendering judgment against it upon any theory. Obviously, the verdict of the jury could not form the basis for a judgment based upon negligence, because it found against appellee on the question of negligence and because of its conflicting nature. It exonerated appellant of negligence and followed its exoneration by finding that appellant's negligence was the proximate cause of appellee's injury. These findings destroy each other and unless the court was warranted in rendering judgment for appellee upon some other theory, the verdict should have been set aside and new trial granted. Puckett v. Davis, Agent, Tex.Civ.App., 238 S.W. 367; Hair v. Wichita Valley Ry. Co., Tex.Civ.App., 274 S.W. 247; St. Louis Southwestern Ry. Co. of Texas v. Inman, Tex.Civ.App., 283 S.W. 689; Herron v. Hughes et al., Tex.Civ. App., 11 S.W.2d 567.

The only theory upon which the court was warranted in rendering judgment in favor of appellee, if at all, was, as suggested by him in his brief, the theory of an implied warranty of appellant that the bottle contained a pure and wholesome beverage and was free from poisonous or deleterious substances. The evidence showed that the bottle of Coca Cola was purchased by appellee from a merchant at Van in Van Zandt County and that the merchant had purchased it in quantity at wholesale from appellant who was engaged in manufacturing the beverage at Terrell in Kaufman County. While appellee based his cause of action upon the alleged negligence of appellant and the case seems to have been tried upon that theory, yet appellee's pleading, in the absence of special exception, was sufficient to raise the question of implied warranty, and we shall therefore consider that question as it is presented in the briefs. Appellant showed by the testi-

mony of its witnesses that in manufacturing and bottling its product it used the latest designed and best equipped machinery the market affords. It introduced a drawing of its machinery which, together with the testimony of its witnesses, would indicate that it was virtually impossible for the beverage bottled and sold by it to be contaminated by any foreign substance at the time it was bottled in its plant. The jury found, however, that at the time the bottle in question was filled and capped by appellant it contained the spider which contaminated the beverage. Although appellee did not produce any witness who testified as to the manner in which the spider got into the bottle, we think he was entitled to utilize the doctrine of res ipsa loquitur, and that the testimony to the effect that the spider was found in the bottle under circumstances which practically precluded the idea that it got into the bottle or was placed therein after the bottle left appellant's plant and before its contents were consumed by appellee, furnished sufficient support in the evidence for the finding of the jury on that question. If, under such circumstances, appellant is liable to the appellee upon the theory of an implied warranty, the judgment should be affirmed; otherwise it should be reversed. There are many decisions of the courts of this, and other, States which deal with the question of an implied warranty under circumstances similar to those revealed by the testimony in this case. Many eminent courts have held that manufacturers of foods or beverages are liable to the consumers of their products purchased from retail dealers if they are contaminated and consumers receive injury by eating or drinking them. Many other authorities, equally as eminent, have held that the law does not recognize an implied warranty under such circumstances. The courts of this State are no exception to the rule and a number of cases are found in the reports wherein our courts have held both ways upon the question. We think a proper determination of the question requires an analysis of the nature of a warranty. Whether expressed or implied, it consists of a contract and can proceed from no other source. The contract in which a warranty is expressed, or from which it may be implied, may be executed either by the person to be bound thereby or by his agent, and the authorities go to the extent of holding that the person for whose benefit the contract is made is entitled to the benefit of the warranty although the con-

tract may have been made by some other person, and even where the person to be benefited did not know of it at the time it was executed. In all events, however, it is established law that no warranty, whether expressed or implied, can be created except by, or as the result of, a contract. If appellee was entitled to a judgment upon the doctrine of an implied warranty, therefore, it must appear that a contract of some kind existed between him and the appellant. The leading case in this State holding that, under such circumstances, a manufacturer is liable to the consumer upon an implied warranty is Coca-Cola Bottling Co. of Fort Worth v. Smith et ux., 97 S.W.2d 761, decided by the Court of Civil Appeals of the Second District. In that case Mrs. Smith received injuries from drinking a bottle of Coca Cola which contained a decomposed cockroach. Justice Dunklin, in expressing the opinion of the Court, recognized the universal rule that a warranty, whether express or implied, must grow out of contractual relations between the parties. The holding is based upon the theory that the manufacturer impliedly represented the beverage to be wholesome and free from deleterious substances and that such representation was intended to induce the consumer to purchase it. The Court said that this representation was the same as advertisements of the quality of such beverages carried in the press and posted upon the highways, which methods of advertising were commonly resorted to by manufacturers of such articles and since such representations were made to induce the ultimate purchase of the beverage from the retailer, it should follow that the manufacturer's implied warranty to the retailer who purchased it from the manufacturer, with the knowledge and intention of the manufacturer that the beverage would be sold to and consumed by a purchaser from the retailer, ran with the article and inured to the benefit of the plaintiff who purchased it from the dealer. As a further basis for its conclusion the Court held that the contract of purchase between the retail dealer and the manufacturer was, in effect, for the benefit of the ultimate consumer to whom both the manufacturer and the retail dealer contemplated the article would ultimately be sold and by whom it would be consumed.

To the same effect is the holding of the Court of Civil Appeals of the First District in the case of Jacob E. Decker & Sons, Inc.,

v. Capps et al., 144 S.W.2d 404. In that case Justice Montcith delivered the opinion of the court and held that there was no question but that an implied warranty arose between the manufacturer and the retailer, J. L. Unger, who purchased the sausage from the manufacturer, and since the manufacturer was aware that the retailer did not purchase the article for his own consumption but purchased it for the purpose of resale to the public, the implied obligation, which unquestionably arose in favor of the retailer, ran with the article and inured to the benefit of the appellees who purchased it from the retailer.

We are not in accord with the holdings in these cases. We are not aware of any principle of law that binds one, as under a warranty, who merely advertises a commodity in the newspapers or upon billboards or over radios, as appellant in this case did, even though in such advertisements he may recommend its use or consumption by the public. It is true, of course, that one may bind himself as under contract by publishing an offer of a reward addressed to the public generally to be paid in consideration of the performance of certain acts by anyone who chances to read the offer and perform the service specified in it as a consideration for the reward. Liability for the reward is contractual, however, and it becomes binding only when it is accepted and acted upon by another. The mere doing of the things specified in the offer without a conscious reference to the proposal contained in it is not the consideration for which it calls and does not result in a binding contract. A meeting of the minds of the contracting parties must be shown. Broadnax v. Ledbetter, 100 Tex. 375, 99 S.W. 1111, 9 L.R.A.,N.S., 1057; Tobin et al. v. McComb et al., Tex.Civ.App., 156 S.W. 237; Choice et al. v. City of Dallas, Tex. Civ.App., 210 S.W. 753.

The record in this case does not show that appellant sold its product by retail but that it sold the same to retail dealers for that purpose. Whatever the advertisements may have been, it is inferable that they went only to the extent of recommending the beverage to the public as a desirable and wholesome drink generally and importuned its members to make contracts of purchase with those who had it for sale. This falls far short of an offer personally to enter into a contract with anyone who may act upon the recommendation. The testimony does not show what the advertisements contained

nor does appellee claim that he accepted any offer of appellant nor that he was induced to purchase the bottle of Coca Cola by any such advertisement.

Desirable although it may be to protect purchasers of deleterious or poisonous articles of food from injury in their consumption and to place legal responsibility upon the manufacturers of such commodities when they are permitted by the manufacturers to enter the market to be purchased and consumed by the general public to its injury and damage, such responsibility can not be enforced by the courts unless sound basis therefor can be found in the law. There can be no legal warrant for such holding unless in some manner a contract between the parties can be discerned and, in our opinion, the proposition that a contract of purchase made between a retail dealer and a manufacturer, by which the former purchases from the latter a quantity of goods to be immediately resold to the purchasing public, is made for the benefit of any member of the public who chances to enter the store of the retail dealer and purchase such commodity, is not a sound proposition of law. It is not likely that any beneficent or altruistic motives enter into such a transaction. The goods are sold by the manufacturer for the profit involved and the retail dealer purchases them with the same object in view. It is not within the power of the courts to construct contracts not made by the parties nor to impose elements that are neither contemplated by them nor implied by their actions in commercial or business transactions. It is elementary that a contract involves an offer and an acceptance. The offer is made by one of the parties and accepted by the other. The ultimate purchaser of articles of food in a transaction such as we have here can not be said to be a party to the contract. No offer was made by either him or the manufacturer and none was accepted by either. The essential elements of a contract are, therefore, absent.

In the case of Dunn v. Texas Coca-Cola Bottling Company, 84 S.W.2d 545, 549, the Court of Civil Appeals of the Eleventh District repudiated the doctrine of an implied warranty in such a transaction, and in expressing the opinion of the Court, Justice Funderburk said: " * * * it seems to us wholly illogical that under a situation like that here presented where a consumer has not purchased the product from the bottling company there exists any contract between the bottling company and the consumer." It is established by the decisions of our courts that the manufacturer is liable for negligence, under proper allegations and proof, if the commodities produced by him contain deleterious substances and result in injury to the consumer. Liggett & Myers Tobacco Co. v. Wallace, Tex.Civ. App., 69 S.W.2d 857. And that the retail dealer is likewise liable in damages to a consumer to whom he sells articles of food containing such substances which result in injury and damage to the consumer. Walker v. Great Atlantic & Pacific Tea Co., 131 Tex. 57, 112 S.W.2d 170; S. H. Kress & Co. v. Ferguson et al., Tex.Civ.App., 60 S. W.2d 817. These holdings are based upon the existence of contractual relations between the parties and are supported by sound reasoning as well as the holdings of many other courts. There being no contractual relationship between the ultimate purchaser and the manufacturer of the product, no implied warranty can arise as between them, and, in our opinion, the court was not warranted in rendering judgment in favor of the appellee upon the theory of an implied warranty.

Other assignments of error are urged by appellant, but the questions raised by them will probably not arise upon another trial and we deem it unnecessary to discuss them.

From what we have said, it follows that, in our opinion, the court erred in rendering judgment in favor of appellee. The judgment will therefore be reversed, and the cause remanded.

### On Motion for Rehearing.

Since the opinion in this case was handed down, the Supreme Court has decided the case of Jacob E. Decker & Sons v. Capps, Tex.Sup., 164 S.W.2d 828, which involved the identical question of law decided by us in the instant case. The judgments of the trial court and the Court of Civil Appeals in the Decker case were affirmed by the Supreme Court, and the rule has thereby been established in this state that, as a matter of public policy, the law imposes upon a manufacturer of food products, upon the theory of an implied warranty, liability for damages to the ultimate consumer who purchases such products from a retail dealer and is injured by their consumption as a result of such food being contaminated in the process of manufacturing by poisonous or deleterious substances. The Supreme Court having construed the law governing the

controlling question in the case to be different from that which we held it to be, we are bound thereby and in deference to the holding of the Supreme Court, appellee's motion for rehearing will be granted and the judgment of the court below affirmed.